UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIERCE TILLMAN-BRANCH,

                            **Plaintiff,**

   vs.                                                                 1:19-CV-540
                                                                              (MAD/DJS)

THE GRAND REHAB AND NURSING AT
BARNWELL,

                            **Defendant.**
_____

APPEARANCES:                                           OF COUNSEL:

**KIERCE TILLMAN-BRANCH**
Plaintiff *pro se*

**TRAUB LIEBERMAN STRAUS &**             **GREGORY ROSS BENNETT, ESQ.**
**SHREWSBERRY LLP**                          **HILLARY JACOBS RAIMONDI, ESQ.**
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On May 6, 2019, Plaintiff, Kierce Tillman-Branch, commenced this action against Defendant, The Grand Rehab and Nursing at Barnwell ("Grand Rehab"). Dkt. No. 1. Plaintiff's complaint alleges (1) hostile work environment in violation of Title VII and (2) race/color discrimination in violation of Title VII. *Id.* at 2-4.

1

Currently before the Court is Defendant's motion for summary judgment, which Plaintiff has opposed. *See* Dkt. Nos. 37, 41. For the following reasons, Defendant's motion is granted.

## II. BACKGROUND

Grand Rehab is a facility for advanced rehabilitation and nursing located in Valatie, New York. Dkt. No. 37-2 at ¶ 1. Plaintiff was an employee of Vertical Staffings ("Vertical"), which provided supplemental personnel to Grand Rehab on an as-needed basis in order for Grand Rehab to adjust to fluctuations of its resident population. *See id.* at ¶¶ 6, 10, 16. When Plaintiff began her employment with Vertical, she acknowledged and agreed that she was an employee of Vertical and not any of Vertical's clients. *See id.* at ¶ 17. Vertical directly compensated Plaintiff throughout her employment with Vertical. *See id.* at ¶ 25. Plaintiff was employed with Vertical as a Licensed Practical Nurse ("LPN"). *See id.* at ¶ 24. Vertical assigned Plaintiff to perform services at Grand Rehab in January 2018. *Id.* at ¶ 32. On at least two occasions, Plaintiff completed paperwork for Vertical in order to convert from being paid as an employee to being paid as an independent contractor and/or vice-versa. *See id.* at ¶ 26. On January 10, 2019, however, Plaintiff was designated as an independent contractor from the perspective of Vertical's payroll system, and neither state nor federal taxes were withheld from her compensation for that period of time. *See id.* at ¶ 30.

During Plaintiff's assignment to Grand Rehab, Vertical also assigned Plaintiff to another entity. *See id.* at ¶ 33. While assigned to Grand Rehab, Plaintiff was "left on her own to complete her duties as an experienced LPN" and primarily used her own tools to complete her services. *Id.* at ¶ 41. Grand Rehab scheduled Plaintiff to work at the facility and assigned her to a unit based on need for staff. *See id.* at ¶ 43.

On January 10, 2019, Plaintiff was scheduled to work at Grand Rehab from 8:00 a.m. to 3:00 p.m. *See id.* at ¶ 47.  The Nurse Manager, Sarah Trembly, asked Plaintiff to assist Nurse Marissa Schoonmaker with her "med pass", the distribution of medications to residents on a particular floor. *See id.* at ¶ 49. Plaintiff alleges that she told Nurse Manager Trembly that she would assist Nurse Schoonmaker once she completed her own med pass. *See id.* at ¶ 52.  After completing her med pass, Plaintiff observed the residents and did not assist Nurse Schoonmaker. *See id.* at ¶ 53.  Plaintiff was then asked to go to the office of the Director of Nursing, Nona Bluestein, where Ms. Bluestein inquired whether Plaintiff declined to assist Nurse Schoonmaker. *See id.* at ¶¶ 54, 55. Ms. Bluestein then directed Plaintiff to return to the floor and continue her shift. *See id.* at ¶ 56. Around 12:30 p.m., Plaintiff spoke with Nurse Manager Trembly in her office. *See id.* at ¶ 59. Nurse Manager Trembly told Plaintiff that she informed Ms. Bluestein that Plaintiff did not assist Nurse Schoonmaker. *See id.* at ¶ 60.  Plaintiff alleges that after the conversation in Nurse Manager Trembly's office, Nurse Manager Trembly followed her down the hallway yelling at her. *See id.* at ¶ 62. Ms. Bluestein later encountered Plaintiff in the hallway and asked Plaintiff to return to the medicine room to complete her medicine count and then clock out. *See id.* at ¶¶ 62, 65. While in the medicine room together, Plaintiff alleges that Nurse Manager Trembly mumbled the words "you black bitch." *Id.* at ¶ 69. Plaintiff did not respond, left the medicine room, and clocked out at 1:03 p.m. *See id.* at ¶¶ 70, 71.

Nurse Manager Trembly denies that she discriminated against Plaintiff, that she yelled at Plaintiff, and that she ever uttered the words "you black bitch." *See id.* at ¶ 80.  Ms. Bluestein maintains that she asked Plaintiff to clock out because she believed that Plaintiff refused to assist Nurse Schoonmaker. *See id.* at ¶¶ 105, 106. Following this incident, Plaintiff continued performing services at Grand Rehab until July 2019. *See id.* at ¶ 46.

On March 20, 2019, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  *See id.* at ¶ 88.  On April 9, 2019, the EEOC issued Plaintiff a right to sue letter.  *See id.* at ¶ 89.  On May 6, 2019, Plaintiff commenced this action.  *See* Dkt. No. 1.

### III. DISCUSSION

**A.     Local Rule 56.1**

Local Rule 56.1(b) requires a party opposing a motion of summary judgment to file a response "admitting and/or denying each of the movant's assertions" in the movant's Statement of Material Facts, and "[e]ach denial shall set forth a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 56.1(b).  Where the opposing party fails to follow Local Rule 56.1(b), the Court may accept the properly supported facts stated in the movant's Statement of Material Facts.  *See id.*  While this Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, this standard "does not excuse a *pro se* litigant from following the procedural formalities of summary judgment," including Local Rule 56.1(b).  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citing *Showers v. Eastmond*, No. 00 Civ. 3725, 2001 WL 527484, *4 (S.D.N.Y. May 16, 2001)).  "The courts of the Northern District have adhered to a strict application of Local Rule [56.1]'s requirement on summary judgment motions."  *Id.* (citations omitted).

While Plaintiff has submitted numbered responses to Defendant's Statement of Material Facts, Plaintiff has failed to set forth specific citations to the record supporting her denials.  *See* Dkt. No. 41.  Additionally, many of the assertions in Plaintiff's Response are vague and contradict her deposition testimony.  *See* Dkt. No. 41 at 11-13; Dkt. No. 42 at 8-9.  Accordingly, the properly supported facts set forth in Defendant's Statement of Material Facts are deemed admitted for purposes of this motion.  *See* N.D.N.Y. L.R. 56.1.

B.     **Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan*, 289 F. Supp. 2d at 295 (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a

5

legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**C.     Employer/Employee Relationship Under Title VII**

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII applies only to "employees," but defines an employee as "'an individual employed by an employer.'" *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e(f)).

"When Congress uses the term 'employee' without defining it with precision, courts should presume that Congress had in mind 'the conventional master-servant relationship as understood by the common-law agency doctrine.'" *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23, 112 S. Ct. 1344, 1348, 117 L. Ed. 2d 581 (1992)) (other citations omitted). Courts most often attempt to discern whether a "conventional master-servant relationship" exists when asked to consider whether a party to a proceeding is an employee or independent contractor under the relevant statute. *See id.* (citations omitted). To determine whether an individual is an employee or an independent contractor under the common law of agency is determined by an analysis of the factors set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989). Courts are to consider the following factors:

6

> "(1) the hiring party's right to control the manner and means by which the product is accomplished[;] ... (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; (13) and the tax treatment of the hired party."

*Salamon*, 514 F.3d at 227 (quoting *Reid*, 490 U.S. at 751-52, 109 S. Ct. 2166). "As to the listed factors, the court must weigh only those 'that are actually indicative of agency in the particular circumstances,' … disregarding those that are either irrelevant or of indeterminate weight." *Id.* (quoting *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 111 (2d Cir. 1998)) (other citation omitted); *see also Eisenberg v. Advance Relocation & Storage Inc.*, 237 F.3d 111, 114 (2d Cir. 2000).

Though no single factor is dispositive, *see Reid*, 490 U.S. at 752, "[i]n the context of anti-discrimination cases, courts should 'place special weight on the extent to which the hiring party controls the "manner and means" by which the worker completes her assigned tasks,'" *Salamon*, 514 F.3d at 227 (quoting *Eisenberg*, 237 F.3d at 117). "Once a plaintiff is found to be an independent contractor and not an employee—whether on summary judgment or after a trial—the Title VII claim must fail." *Id.* at 226. Under the first factor, an employer-employee relationship exists where the purported employer controls the result to be accomplished and the "manner and means" by which the purported employee achieves that result. *See Eisenberg*, 237 F.3d at 114 (quoting *Hilton Int'l Co. v. NLRB*, 690 F.2d 318, 320 (2d Cir. 1982)) (other citations omitted).

In their motion for summary judgment, Defendant contends that Grand Rehab did not control the manner and means by which Plaintiff provided services as an LPN because Plaintiff

7

was left on her own to complete her duties and because Defendant never disciplined Plaintiff. *See* Dkt. No. 37-1 at 10-11. Defendant further asserts that the little discretion Grand Rehab had over Plaintiff's activities does not outweigh the other factors which support a finding that Plaintiff was an independent contractor. *Id.* at 6. However, Defendant does not give sufficient weight to this first factor as required by *Reid* and its progeny. Defendant's Statement of Material Facts provides insufficient explanation of Plaintiff's duties at Grand Rehab outside of the fact that she completed duties "as an LPN." *See* Dkt. No. 37-2 at ¶ 34. Additionally, Defendant disregards the fact that Grand Rehab controlled what floor Plaintiff worked on any given day and that the incident at issue arose when a nursing supervisor, employed by Defendant, ordered Plaintiff to assist another nurse. Plaintiff was ultimately disciplined and sent home for not following this order. Consequently, based on this record, the weight of this factor cannot be appropriately determined on a motion for summary judgment.

As to the second factor, "[w]here a position requires 'specialized skills of the sort typically acquired through experience and/or education,' the hired party is more likely deemed an independent contractor rather than an employee." *Williams v. CF Medical, Inc.*, No. 5:06-CV-0827, 2009 WL 577760, *4 (N.D.N.Y. Mar. 4, 2009) (quoting *Eisenberg*, 237 F.3d at 118). Even where a job may require some specialized skill, the focus of the inquiry is the level of skill required for the individual in question as applied in the context of their job. *See Eisenberg*, 237 F.3d at 118 (noting that certain moving jobs may require specialized skills, but the plaintiff's particular duties did not require specialized skills); *see also Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir. 1992) (noting that this factor weighed in favor of finding the plaintiff was an independent contractor because the skills the plaintiff developed in graduate school were necessary to complete his work duties). Defendant contends that Plaintiff is a highly skilled independent

contractor within the meaning of the *Reid* factors because her skill as an LPN allowed her to independently complete her duties at Grand Rehab. *See* Dkt. No. 37-1 at 10. Defendant's Statement of Material Facts states that Plaintiff is experienced as an LPN and that she performed her duties independently, but provides little description of what specific services Plaintiff performed. *See* Dkt. No. 37-2 at ¶ 41. Based on this record, the weight of this factor cannot be decided without more information as to Plaintiff's education and experience and how they relate to the specific duties Plaintiff performed at Grand Rehab.

The tenth and eleventh factors weigh in favor of finding that Plaintiff was an employee. Defendant is currently in business and is in the regular business of providing rehabilitation and nursing to its residents. *See id.* at ¶ 1. As an LPN, Plaintiff performed services that directly relate to this objective. *See Aymes*, 980 F.2d at 863 ("The purpose of this factor is to determine whether the hired party is performing tasks that directly relate to the objective of the hiring party's business").

The fourth, eighth, and thirteenth factors weigh in favor of finding that Plaintiff was an independent contractor rather than an employee of Defendant. Plaintiff was compensated solely by Vertical and not by Defendant, indicating that she was not an employee of Defendant. As to the fourth factor, Plaintiff's work was located at Grand Rehab, but Plaintiff was also concurrently assigned by Vertical to work at a different entity. Regarding the thirteenth factor, at the time of the incident Plaintiff was characterized in Vertical's payroll system as an independent contractor.[1]

---

[1] Defendant's motion emphasizes Plaintiff's tax treatment and contractual language as a strong indication that Plaintiff is an independent contractor and not an employee. *See* Dkt. No. 37-1 at 10-11. Such emphasis is warned against in anti-discrimination cases out of concern that workers and firms may "use individual employment contracts to opt out of the anti-discrimination statutes." *Eisenberg*, 237 F.3d at 117 ("[I]n anti-discrimination cases such as this one, courts *should not* ordinarily place extra weight on the benefits and tax treatment factors enumerated in

*See* Dkt. No. 37-2 at ¶ 30.

The Court finds that the third, fifth, and seventh factors are neutral. Plaintiff used both her own tools and Defendant's tools while performing services at Grand Rehab.[2] As to the fifth factor, the duration of Plaintiff and Defendant's relationship extended over a longer period of time, which indicates that Plaintiff was an employee. *See Aymes*, 980 F.2d at 864. However, Plaintiff performed services for another entity while she was assigned to Grand Rehab and continued her relationship with Vertical after she ceased performing services at Grand Rehab, weighing against finding that Plaintiff was an employee. *See* Dkt. No. 37-2 at ¶¶ 23, 33; *Aymes*, 980 F.2d at 864. Regarding the sixth factor, Defendant's discretion over when and how long Plaintiff worked is neutral because while Grand Rehab did schedule Plaintiff, she had some degree of control over her schedule and her availability. *See id.* at ¶ 36.

Although some *Reid* factors weigh in favor of Defendant and other factors in favor of Plaintiff, the weight of the most important factors under this test cannot be decided, based on this record, on a motion for summary judgment. In its motion, Defendant also argues that it cannot otherwise be characterized as Plaintiff's employer under either the joint employer or single employer doctrine. *See* Dkt. No. 37-1 at 12.

Courts have applied different doctrines for purposes of assessing whether an entity is an employer for purposes of Title VII, including the "single employer" and "joint employer" doctrines. *See Lima v. Adecco &/or Platform Learning, Inc.*, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009), *aff'd*, 375 Fed. Appx. 54 (2d Cir. 2010). "[T]he 'single employer' doctrine

---

*Reid,* and *should* instead place special weight on the extent to which the hiring party controls the "manner and means" by which the worker completes her assigned tasks") (emphasis in original).

[2] Plaintiff used her own pen, stethoscope, and oxygen reader, but used Defendant's blood pressure cuff and thermometer. *See* Dkt. No. 37-2 at ¶¶ 29, 40.

10

applies when 'two nominally separate entities are actually part of a single integrated enterprise,' ... [and] can include parent and wholly-owned subsidiary corporations or separate corporations that operate under common ownership and management." *Id.* at 399-400 (internal citations omitted). This test does not apply because Vertical and Grand Rehab are distinct corporations. Thus, the Court will only address the "joint employer" doctrine.

The "joint employer" doctrine applies where staffing agencies provide temporary employees to their client entities. *See id.* at 400. "[W]hen separate legal entities have 'chosen to handle certain aspects of their employer-employee relationships jointly,' ... courts look at 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision' to determine whether an entity is a joint employer." *Id.* (quoting *Gore v. RBA Group, Inc.*, No. 03-CV-9442, 2008 WL 857530, *3 (N.D.N.Y. Mar. 31, 2008)) (citing *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *N.L.R.B. v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)) (other citations omitted). A plaintiff who is compensated by one entity while performing services on a temporary basis for another entity that controls other aspects of employment, such as hiring, firing, and supervision, may be considered an employee of both. *See Dewitt v. Lieberman*, 48 F. Supp. 2d 280, 288 (S.D.N.Y. 1999) (quoting *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 611 F. Supp. 344, 349 (S.D.N.Y. 1984), *aff'd*, 770 F.2d 157 (2d Cir. 1985)) (other citations omitted).

Here, Vertical was responsible for Plaintiff's hiring, payment, and records. *See* Dkt. No. 37-2 at ¶¶ 12-23, 25-28. Grand Rehab contends that Vertical was also exclusively responsible for discipline and supervision of Plaintiff because Vertical assigned Plaintiff to Grand Rehab. *See* Dkt. No. 37-1 at 13. As addressed above, Defendant's motion for summary judgment and Statement of Material Facts do not adequately address or contain sufficient information for the

11

Court to determine whether Defendant controlled the supervision and discipline of Plaintiff within the meaning of the "joint employer" doctrine. Based on this record, Defendant is not entitled to summary judgment under the "joint employer" doctrine.

Accordingly, the Court finds that questions of fact remain as to whether Plaintiff was employed by Defendant as defined by Title VII. However, even the if Court found that Plaintiff was employed by Defendant, Plaintiff's claims would still fail on the merits.

**D.     Title VII Hostile Work Environment**

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, ... the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race],'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of any other characteristic protected by Title VII, *see Gregory*, 243 F.3d at 692.

"In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pliant Corp.*, 965 F. Supp. 2d 302, 305 (W.D.N.Y. 2013) (citations omitted). Further, "a few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* at 306 (citations omitted).

Even construing Plaintiff's allegations and arguments liberally, there is only one event that could be construed as a discriminatory action for the purposes of her hostile work environment claim: Nurse Manager Trembly's alleged comment, "you black bitch" and Plaintiff being ordered to clock out early on the same day. *See* Dkt. No. 37-2 at ¶ 69. The Court finds that this single event, accepted as true for purposes of this motion, is not sufficient as a matter of law to support a Title VII hostile work environment claim, because it does not constitute "a steady barrage of opprobrious racial comments." *Chick v. County of Suffolk*, 546 Fed. Appx. 58, 59 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Salmon*, 965 F. Supp. 2d at 306 (finding that the use of a racial slur by a coworker combined with multiple other incidents of offensive conduct over a seven-year period was not sufficient to support a hostile work environment claim); *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014) ("[W]hile referring to colleagues with such disrespectful language is deplorable and has no place in the workforce, one utterance of [a racial slur] has not generally been held to be severe enough to rise to the level of establishing liability") (citation omitted).

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff cannot establish that she was subjected to severe or pervasive conduct. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.

**E.     Title VII Discrimination**

Disparate treatment discrimination claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). "To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of

13

discrimination." *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. Appx. 54, 56 (2d Cir. 2016) (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir. 1989); *McDonnell Douglas* Corp, 411 U.S. at 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668).

It is undisputed that Plaintiff is a member of a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a). Therefore, in order to establish a *prima facie* case of race discrimination, Plaintiff must prove that that she was subject to an adverse employment action, and that the circumstances surrounding that employment action give rise to an inference of discrimination. "An 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Terry v. Aschroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" *Id.* (quoting *Galabya*, 202 F.3d at 640).

Plaintiff asserts in her Complaint that she suffered an adverse employment action because she was "wrongfully escorted out the building" and "suspended for the day." *See* Dkt. No. 1 at 4. She alleges that this was an inconvenience because she suffered a loss of pay and was unable to perform her job duties for the remainder of her shift. *See id.* However, this assertion is insufficient to show that Plaintiff suffered an adverse employment action.

On January 10, 2019, Plaintiff was scheduled to work from 8:00 a.m. to 3:00 p.m., and she was asked to clock out and did so at 1:03 p.m. *See* Dkt. No. 37-2 at ¶¶ 47, 71. Although Plaintiff claims that she was asked to work a double on this day, there is no evidence to verify this fact and Defendant's records indicate that she was not scheduled for a double shift. *See id.* at ¶ 48. Thus,

14

Plaintiff clocked out two hours before her shift was scheduled to end. *See id.* at ¶¶ 47, 71. Additionally, Plaintiff returned to Grand Rehab the next day and continued performing services for Defendant until July 2019 with no significant changes to her position or responsibilities. *See id.* at ¶¶ 46, 74. Thus, Plaintiff cannot establish that she suffered an adverse employment action amounting to more than a mere inconvenience. *See Gibson v. Wyeth Pharms., Inc*., No. 07 Civ. 946, 2011 WL 830671, *7 (S.D.N.Y. Mar. 9, 2011) (finding that a three-day suspension that may or may not have been without pay did not rise to the requisite level of materiality where there was no evidence that "the suspension worked such an alteration in the terms and conditions of Plaintiff's employment"); *Polanco v. 34th St. P'ship, Inc.*, 724 F. Supp. 2d 420, 426 (S.D.N.Y. 2010) (holding that a one-day suspension was not a material adverse employment action); *Dobrynio v. Cent. Hudson Gas & Elec. Corp.*, 419 F. Supp. 2d 557, 564-65 (S.D.N.Y. 2006) ("[B]eing suspended [without pay] for a single day, with no long term consequences whatever, is not an actionable adverse employment action because it is not material"). Alternatively, even if Plaintiff's loss of pay did amount to an adverse employment action, Plaintiff has not sufficiently shown that the circumstances surrounding that employment action give rise to an inference of discrimination. Specifically, there is no evidence in the record to connect Nurse Trembly's comment to Plaintiff's early dismissal on January 10, 2019.

  Even if the Court found that the circumstances give rise to an inference of discrimination, the claim is still subject to dismissal. Once the plaintiff presents a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Upon the defendant's articulation of a legitimate, non-discriminatory reason, the presumption of discrimination arising from the plaintiff's *prima facie* showing "drops out of the picture." *Reeves*

*v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). To rebut the articulated justification for the adverse action, "the plaintiff must show both that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 511 n.4 (internal quotations omitted). "However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment." *Diggs v. Niagara Mohawk Power Corp.*, No. 1:14-CV-244, 2016 WL 1465402, *3 (N.D.N.Y. Apr. 14, 2016) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

Defendant has asserted that its legitimate, non-discriminatory reason for instructing Plaintiff to leave on January 10, 2019, was due to Ms. Bluestein's good-faith belief that Plaintiff refused to assist Nurse Schoonmaker when asked. *See* Dkt. No. 37-2 at ¶ 107. Ms. Bluestein was not the Grand Rehab staff member that allegedly made the racist remark, and Plaintiff has not submitted sufficient evidence to show that Ms. Bluestein's decision to instruct Plaintiff to clock out was related to the racist remark allegedly made to Plaintiff. Thus, Plaintiff's allegations of discrimination are insufficient to rebut this legitimate, non-discriminatory reason for Defendant's actions.

Based on the foregoing, the Court finds that Plaintiff has failed to put forth sufficient evidence that would permit a rational jury to find that Plaintiff was subjected to discrimination in violation of Title VII. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's Title VII discrimination claim.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 37) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2021
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge